■ SATRA LIMITED et al., Appellants, v COCA-COLA COMPANY et al., Respondents. [675 NYS2d 348] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered May 20, 1997 against plaintiffs and in favor of defendant Coca-Cola Company on its counterclaim for the sum of $2,643,951.71, and which granted defendants' motion for summary judgment dismissing plaintiffs' remaining cause of action, unanimously reversed, on the law, with costs and disbursements, the motion denied and the first cause of action reinstated, the judgment on the counterclaim vacated and the matter remanded for further proceedings. Appeal from order, same court and Justice, entered April 11, 1997, unanimously dismissed, without costs, as subsumed within the appeal from the judgment.

Defendants moved to dismiss plaintiff Satra Limited's claim for commissions based upon a purported failure of consideration due to Coca-Cola's alleged inability to use "countertrade credits" generated by Satra under a series of agreements. At best, defendants' evidence demonstrates that they were unable to use the countertrade credits generated in 1989 by Satra during the 1990 calendar year. By their terms, however, the agreements did not expire prior to 1992 or, alternatively, until the last shipment was made under the supply contracts with Sojuzplodoimport and Technopromimport, and the commission agreement was subject to extension pursuant to paragraph nine thereof.

In arguing the motion, both parties misinterpreted the August 18, 1989 modification agreement. As acknowledged by defendants, the modification was procedural in nature only, allowing plaintiffs to obtain an advance on commissions earned under the General and Commission Agreements upon presentation of the specified documentation. Thus, requiring the written authorization of an "appropriate Soviet Authority acknowledged by Sojuzplodoimport" was merely a prerequisite to U.S.

Chrome obtaining an unearned advance payment quarterly. It was not a prerequisite to commissions otherwise earned under the General and Commission Agreements, and contrary to defendants' assertion, the modification agreement did not require that the "recognition" of the competent authority by Avtoexport and Sojuzplodoimport be in writing.

There was nothing in the supply contracts that required that purchases by Sojuzplodoimport be made with the countertrade credits generated by plaintiffs. All that the agreements required was that plaintiffs make sufficient countertrade credits available for use in the purchase of Coca-Cola products under the supply agreements. There is evidence in the record, consisting of a letter from Coca-Cola, which is admissible as an admission of a party opponent, demonstrating that Sojuzplodoimport used $18,795,222 (U.S.) to purchase Coca-Cola and Fanta concentrates. That would appear to generate approximately $1,870,000 (U.S.) in commissions to Satra. The same letter acknowledged that Coca-Cola received written confirmations from Avtolada and Avtoexport of the receipt of an additional $32,000,000 (U.S.) countertrade credits. Accordingly, an issue of fact remains with respect to whether the generated countertrade credits were "available" within the meaning of the agreements, and inasmuch as the agreements did not make plaintiffs' right to commissions for purchases actually made under the supply contracts dependent upon the use of countertrade credits, there are also issues of fact regarding the full extent of Coca-Cola's dealings with Sojuzplodoimport and Technopromimport through 1992 or any further extension or earlier termination of the supply contracts, which must be resolved before Satra's right to commissions can be fully determined. Moreover, defendants failed to document the advance to Satra of more than 1,372,516.29 rubles under the modification agreement, and accordingly, failed to demonstrate their right to judgment for $2.3 million (U.S.) on the counterclaim.

It is apparent that difficulties associated with use of the countertrade credits negated the benefit of Coca-Cola's continued relationship with plaintiffs. It is not the province of the courts, however, to relieve parties of the effects of a bad bargain. The bargained-for consideration in this case goes beyond the use of countertrade credits to the opening up of new markets in the former Soviet Union, the efforts made by the respective parties to do so and the efforts made to carry out the correlative commitment to assist in the marketing of Lada cars in the United Kingdom.

In our prior order dated February 10, 1998 (247 AD2d 248), we reinstated plaintiff's fourth cause of action for breach of a purported contract to "help Satra Group increase sales of Soviet made vehicles in the United Kingdom", and to pay "$200 per car sold over and above the base level of 17,000" as evidenced by a February 28, 1990 letter from defendants' representative, for a lack of evidence regarding what efforts were made by Coca-Cola to perform this obligation. We reaffirm that determination, and reinstate plaintiffs' first cause of action for commissions, which remains potentially viable, and may act as a possible offset to any recoupment claim asserted by defendants. Concur—Sullivan, J. P., Milonas, Mazzarelli and Andrias, JJ.